UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUISE CHRISTOPHE,

      Plaintiff,

v.                      Case No:  2:22-cv-017-JES-NPM

WALMART, INC. a/k/a WAL-MART
STORES EAST, LP,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Partial Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint and Supporting Memorandum of Law (Doc. #32) filed on May 27, 2022. Plaintiff filed a Response in Opposition (Doc. #37) on June 18, 2022.  For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

**A. Factual Background**

The following facts are taken from the Second Amended Complaint (SAC).  Plaintiff Louise Christophe (Plaintiff) is a Haitian American woman who lives in Florida.  (Doc. #26, ¶ 10.) In 2015, defendant Walmart, Inc. a/k/a Wal-Mart Stores East, LP (Defendant or Walmart) hired Plaintiff as a "Stock Associate" in one of its stores located in Fort Myers Beach, Florida.  (Id., ¶¶ 2, 5, 12, 15.) Plaintiff was later promoted to an "A CAP Associate"

1

position.  (Id., ¶¶ 2, 15.)  Plaintiff's job responsibilities
included stocking store shelves and assisting customers.  (Id., ¶
17.)

On or about May 5, 2020, Plaintiff experienced a "syncopal
episode" while at work; it was later determined that Plaintiff had
to have a cholecystectomy and cardiac surgery.  (Id., ¶ 18.)  As
a result, Plaintiff alleges that she was disabled and that her
normal life activities were substantially limited. (Id., ¶ 19.)

Plaintiff alleges that in June 2020 she notified Defendant
about her disability and requested an accommodation to work without
lifting packages over 25 pounds.  (Id., ¶ 29.)  The SAC also
alleges that on or about June 24, 2020, Plaintiff informed her
immediate supervisor at work that she needed [unspecified]
reasonable accommodations while she underwent "medical treatments"
as recommended by her doctor. (Id., ¶ 20.)  The SAC does not allege
what the "medical treatments" entailed.  Plaintiff's supervisor
was "dismissive," but advised Plaintiff that she would receive
"something in the mail." (Id., ¶ 21.)

On an unstated date, Plaintiff received a letter from
Defendant's agent, Sedgwick Claims Management, Inc. (Sedgwick),
with whom Plaintiff began communicating about her medical
treatment. (Id., ¶ 22.) Defendant advised Plaintiff that she could
not return to work until she was medically released by her doctor.
(Id., ¶ 23.)  Plaintiff alleges that around July 5, 2020, Defendant

refused to engage in the interactive process, denied Plaintiff's request for the lifting accommodation, and stated that moving, lifting, carrying and placing merchandise and supplies weighing up to 50 pounds without assistance was an essential function of her position.  (Id., ¶¶ 30, 37.)  The SAC alleges that on unspecified dates in 2020 Plaintiff "constantly communicated" with Defendant's agent Sedgwick "regarding her ongoing medical treatments."  (Id., ¶ 38.)

In or around October 2020, Plaintiff informed Sedgwick that she received a medical release from her doctor and that she could return to work without any medical restrictions. (Id., ¶¶ 24, 39.) Defendant, however, terminated Plaintiff's employment, informing her that it no longer had a position for her and that she had "abandoned" her position. (Id., ¶¶ 24, 40.)

**B. Procedural Background**

The operative pleading is the April 26, 2022, Second Amended Complaint and Demand For Jury Trial. (Doc. #26.)  The Second Amended Complaint (SAC) alleges that: (1) Defendant failed to provide a reasonable accommodation in violation of the American Disabilities Act of 1990 (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA) (collectively the ADA), 42 U.S.C. § 12101 et seq. (Count I); (2) Defendant retaliated against her due to her "disability" in violation of the ADA (Count II); and (3) Defendant retaliated against her because of "race" in violation of Title VII

3

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count
III). (Id., pp. 4-7.)  Plaintiff seeks past and future lost wages
and benefits, along with other compensatory and punitive damages.
(Id., pp. 7-8.)

Defendant urges the Court to dismiss Counts I and II of the
SAC with prejudice because – after two prior attempts in filing
her claims with this Court – Plaintiff still fails to state a claim
upon which relief may be granted. (Doc. #32, p. 1.) In Response,
Plaintiff asserts that she has sufficiently alleged her claims
under the ADA.  (Doc. #26, p. 4.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint
must contain a "short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
This obligation "requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not
do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(citation omitted).  To survive dismissal, the factual allegations
must be "plausible" and "must be enough to raise a right to relief
above the speculative level." Id. at 555. See also, Edwards v.
Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations
omitted).

4

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

### A. Count I — Failure To Accommodate In Violation of ADA

Count I of the SAC alleges that in or around June 2020, Plaintiff notified Defendant about her disability and requested a reasonable accommodation to work without lifting packages over 25 pounds. (Doc. #26, ¶ 29.) Plaintiff alleges, however, that Defendant violated the ADA when on or around July 5, 2020, Defendant failed to engage in the interactive process and denied

Plaintiff's request, "claiming that moving, lifting, carrying and placing merchandise and supplies weighing up to 50 pounds without assistance was required to perform the essential functions of her position." (Id., ¶ 30.)  Plaintiff claims that Defendant's denial of her request for the accommodation was unreasonable because she had worked in her position for over five years and could have easily performed her position without lifting in excess of 25 pounds. (Id., ¶ 31.)

The ADA prohibits discrimination in employment on the basis of an employee's disability. Discrimination may include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee[.]" 42 U.S.C. § 12112(b)(5)(A). To state a prima facie claim of disability discrimination based on an alleged failure to accommodate, Plaintiff must demonstrate that she: (1) is disabled; (2) is a qualified individual, meaning able to perform the essential functions of the job; and (3) was discriminated against because of her disability by way of the defendant's failure to provide a reasonable accommodation. Russell v. City of Tampa, 652 F. App'x 765, 767 (11th Cir. 2016) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).  In addition, for any claim under the ADA, a plaintiff must also establish that her employer had actual knowledge of her

alleged disability or regarded her as disabled. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1186 (11th Cir. 2005).

Defendant argues that Count I of the SAC does not state a plausible failure to accommodate claim because there are no facts showing Plaintiff has an actual disability, was perceived as having a disability, or was regarded as having a disability. (Doc. #32, p. 4.) Plaintiff responds that she has provided a "short and plain statement showing she is entitled to relief" and that the SAC alleges "Plaintiff is a qualified individual with a disability." (Doc. #37, p. 3.)

"The ADA defines the term 'disability' as (1) a physical or mental impairment that 'substantially limits one or more' of an individual's 'major life activities,' (2) a 'record of such an impairment,' or (3) 'being regarded as having such an impairment' as described in subsection (1)." Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) (quoting 42 U.S.C. § 12102(1)).  The first and third components of the disability definition are at issue here.

### (1)  Actually Disabled

"An individual who is 'actually disabled' is one with 'a physical or mental impairment that substantially limits one or more major life activities.'" Lewis v. City of Union City, 934 F.3d 1169, 1180 (11th Cir. 2019) (quoting 42 U.S.C. § 12102(1)(A)). The ADA defines a physical or mental impairment as a disorder or

condition affecting one or more of the following body systems: "neurological, musculoskeletal, special sense organs, respiratory . . ., cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

Even assuming a plaintiff suffers from a physical impairment, such an impairment, "standing alone, . . . is not necessarily a disability as contemplated by the ADA." Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 911 (11th Cir. 1996). Rather, "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).  "Major life activities" include such things as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" as well as the operation of a major bodily function, including but not limited to . . . digestive, . . . respiratory, [and] circulatory functions." Zalezhnev v. Wonderworld Montessori Acad. Corp., No. 20-10277, 2021 U.S. App. LEXIS 29913, at *5 (11th Cir. Oct. 5, 2021) (citing Chanda v. Engelhard/ICC, 234 F.3d 1219, 1222 (11th Cir. 2000)); 42 U.S.C. § 12102(2)(B). An impairment is considered to "substantially limit" one of these activities if the disability renders the individual unable to perform the activity or significantly restricts its performance compared to the average

person. <u>Munoz v. Selig Enters.</u>, 981 F.3d 1265, 1272 (11th Cir. 2020).

The SAC makes the following allegations as to Plaintiff's disability:

> 18. On or about May 5, 2020, Plaintiff, while working for Defendant, experienced a syncopal episode. Afterward, medical examinations determined Plaintiff had to have cardiac surgery and cholecystectomy.
>
> 19. As a result, Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended. As a result of Plaintiff's disability, major life activities, have substantially limited her normal life activities.

(Doc. #26, ¶¶ 18-19.) The SAC also refers to unspecified "medical treatments" (<u>Id.</u>, ¶ 20) and the need for a lifting accommodation of no more than 25 pounds "while she underwent her medical treatments." (<u>Id.</u>, ¶¶ 20, 29.)

Viewing the allegations in a light most favorable to Plaintiff, the SAC minimally satisfies the plausibility requirements. As to the existence of a physical impairment, Plaintiff states that in May 2020 she had a syncopal episode, i.e., she fainted, and afterwards was determined to be in need of cardiac surgery and a cholecystectomy (i.e., surgical removal of the gallbladder). There are no facts pled which indicate Plaintiff had either procedure. The SAC, however, allows a reasonable inference that Plaintiff's fainting episode was a physical

condition or disorder that affected a biological system, thus affecting her ability to lift weight in excess of 25 pounds.

Plaintiff must also allege sufficient facts showing that her physical impairment substantially limits one or more major life activities. "In determining whether an injury substantially limits a major life activity, we consider '(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Pritchard v. Fla. High Sch. Ath. Ass'n, No. 2:19-cv-94-FtM-29MRM, 2020 U.S. Dist. LEXIS 114512, at *15 (M.D. Fla. June 30, 2020) (quoting Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998).

Here, the duration of the disability is potentially problematic. The SAC alleges that the disability arose on or about May 5, 2020, and that after receiving "medical treatments" she was cleared to return to work without any restrictions in or around October 2020. (Doc. #26, ¶ 39.) "While an impairment need not last for more than six months to be considered substantially limiting, the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." Lewis v. Fla. Default Law

10

Group, P.L., No. 8:10-cv-1182, 2011 U.S. Dist. LEXIS 105238, 2011 WL 4527456, at *4 (M.D. Fla. 2011) (quoting 29 C.F.R. Pt. 1630)(internal quotation marks omitted).  The SAC shows that there was approximately five months between when Plaintiff's disability arose and when she could return to work without any restrictions. Though somewhat brief, at this stage in the litigation the Court finds the duration of the alleged disability is sufficient to avoid dismissal. Compare Richardson v. Koch Foods of Ala.. LLC, No. 2:16-cv-00828-SRW, 2019 U.S. Dist. LEXIS 54893, at *19-20 (M.D. Ala. Mar. 29, 2019)(plaintiff did not have an actual disability after a heart operation as he was able to return to work with no restrictions after six weeks and without any limitation to a major life activity).

With respect to whether Plaintiff's alleged physical impairment substantially limits a major life activity, the SAC alleges that Plaintiff cannot lift in excess of 25 pounds.  Viewing the allegations in a light most favorable to Plaintiff, the Court finds such allegations sufficient to show that Plaintiff's ability to lift was substantially limited as compared to the general population, and thus she has plausibly alleged that she suffered from an actual disability. See 29 C.F.R. § 1630.2(j)(i) ("'Substantially limits' is not meant to be a demanding standard."); 29 C.F.R. § 1630.2(j)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual

11

from performing a major life activity in order to be considered substantially limited.").

### (2)   Regarded As Having An Impairment

Defendant argues that it did not regard Plaintiff as disabled, and that Plaintiff's medical condition was temporary and cannot constitute a disability under the ADA. (Doc. #32, pp. 4, 7.) Plaintiff responds that based upon Paragraph 23 of the SAC, which alleges that Defendant advised her that she could not return to work until her doctor provided a medical release, is sufficient to infer that Defendant regarded her as having a disability. (Doc. #26, ¶ 23; Doc. #37, p. 4.)

Under the "regarded as" component of the disability definition, an individual is considered disabled if he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Lewis, 934 F.3d at 1181 (citing 42 U.S.C. § 12102(3)(A)). "[A]n employer that takes an adverse action because it fears the consequences of an employee's medical condition has regarded that employee as disabled." Lewis, 934 F.3d at 1182.

Plaintiff has provided sufficient facts from which the Court may reasonably infer that Defendant regarded her as disabled. Not allowing Plaintiff to return to work, and in essence placing her on leave, until she received a medical release from her physician

plausibly shows that Defendant perceived Plaintiff as having a physical impairment. See Lewis, 934 F.3d at 1181 (finding sufficient facts permitted a finding that the defendant regarded the plaintiff as disabled from a heart condition when it placed her on leave because of the impairment).

However, an individual cannot be regarded as having an impairment if that impairment is "transitory and minor," i.e., an impairment with an actual or expected duration of six months or less. 29 C.F.R. §§ 1630.2(g)(1)(iii), (j)(1)(ix). See, e.g., Jones v. STOA Int'l/Fla., Inc., 422 F. App'x 851, 853 (11th Cir. 2011)(affirming finding that plaintiff did not have an actual disability because the complaint did not allege that plaintiff was expected to have a long-term impairment from a staph infection); Richardson v. Koch Foods of Ala.. LLC, No. 2:16-cv-00828-SRW, 2019 U.S. Dist. LEXIS 54893, at *19-20 (M.D. Ala. Mar. 29, 2019)(plaintiff did not have an actual disability after a heart operation as he was able to return to work with no restrictions after six weeks and without any limitation to a major life activity); Dawley v. Erie Indem. Co., 100 F. App'x 877, 883 (3d Cir. 2004) ("The fact that [the plaintiff] took a year leave from work to recover from his operation does not create a record of impairment."). The approximate dates alleged in the SAC are close enough to the six-month time period so as to prevent dismissal at this stage of the proceeding. Accordingly, the Court finds that

Plaintiff has alleged sufficient facts showing that Defendant regarded her as disabled.

### (3)  No Reasonable Accommodation Needed

Defendant also argues that Plaintiff's failure to accommodate claim fails because Plaintiff admits that she did not need a reasonable accommodation as of the date of her termination. (Doc. #32, p. 6.)  The Court does not agree.

Although it is the plaintiff who "bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job . . . ", Gilliard v. Ga. Dep't of Corrections, 500 F. App'x 860, 868 (11th Cir. 2012) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-86 (11th Cir. 1997)), an employer's "duty to provide a reasonable accommodation is . . . triggered [when] a specific demand for an accommodation has been made." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-64 (11th Cir. 1999) ("[T]he initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.").

Plaintiff has alleged that on June 24, 2020, she requested a reasonable accommodation – that she be able to work without lifting packages over 25 pounds (Doc. #26, ¶¶ 20, 29), but that Defendant

refused to engage in the interactive process on July 5, 2020. Thus, Plaintiff has provided sufficient facts showing that she requested a specific accommodation that triggered Defendant's obligation to provide a reasonable accommodation, or at the very least to engage in the interactive process with Plaintiff (prior to her termination). "Because [Defendant] continued to employ [Plaintiff], [it] was obligated under the ADA to reasonably accommodate [Plaintiff] once [s]he was capable of returning to work." Busken v. City of Greenville, No. 3:19-CV-02808-X, 2021 U.S. Dist. LEXIS 212300, at *9 (N.D. Tex. Nov. 3, 2021)(rejecting an employer's argument that it had no obligation the plaintiff because it planned to terminate his employment, since the employer's obligation to accommodate is triggered when an employee requests an accommodation). The Court therefore rejects Defendant's argument that it essentially owed no duty to accommodate Plaintiff as of the date of her termination.

Defendant's motion to dismiss Count I of the SAC is denied.

**B. Count II – Retaliation In Violation Of ADA**

The ADA prohibits covered employers from retaliating against an employee who "has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). To establish a prima facie ADA retaliation claim, Plaintiff must

allege (1) that she engaged in a statutorily protected activity or expression, (2) that she suffered an adverse employment action, and (3) a causal connection between the protected acts and the adverse employment action. See Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018); see also Albra v. City of Fort Lauderdale, 232 F. App'x 885, 891 (11th Cir. 2007). "The failure to satisfy any of these elements is fatal to a complaint of retaliation." Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004).

Defendant contends that Plaintiff has not sufficiently alleged the first and third elements of her ADA retaliation claim. (Doc. #32, pp. 7-9.)

### (1)  Engaging In Protected Activity

Defendant argues that Count II of the SAC fails to allege a claim for retaliation under the ADA because a denial of a request for accommodation cannot form the basis of such a claim. (Id., p. 8.) Plaintiff responds that she has not alleged that Defendant's denial of her request to accommodate her disability is the basis of her ADA retaliation claim.[1] (Doc. #37, p. 7.) Rather, Plaintiff

---

[1] Defendant's denial of Plaintiff's request for an accommodation cannot serve as the basis of her retaliation claim. See Calvo v. Walgreens Corp., 340 F. App'x 618, 625-26 (11th Cir. 2009) (plaintiff cannot "reclothe[]" her discrimination claim into a retaliation claim based solely on an alleged failure to accommodate).

16

argues that the SAC alleges protected activity in Paragraph 40, which states,

> 40. Despite months of engaging in protected activity of reporting her medical conditions to the Defendant's Agent and informing Plaintiff that she could return to work without restrictions, Plaintiff was terminated by being told that Defendant no longer had a position for her and that she had "abandoned" her position.

(Doc. #26, ¶ 40.) Plaintiff also alleges that "Defendant terminated [her] because she engaged in protected activity related to her disabilities." (Id., ¶ 42.)

Taking Plaintiff's allegations as true, the SAC has not sufficiently alleged that Plaintiff engaged in protected activity. Plaintiff's allegation that she reported "medical conditions" to Defendant's agent for months, or reported she could not return to work without restrictions, are too vague and conclusory to plausibly show that Plaintiff opposed any act or practice made unlawful by the Act.  See 42 U.S.C. § 12203(a). See also In re Chiquita Brands Int'l, Inc., 792 F. Supp. 2d 1301, 1358 (S.D. Fla. 2011) (holding that the plaintiff "must plead factual content," not "vague and conclusory" assertions to state a claim).

### (2) Causal Nexus Between Protected Activity and Adverse Employment Action

Because Plaintiff has failed to allege that she engaged in protected activity under the ADA, there can be no causal nexus between protected activity and any alleged adverse employment action. See Higdon, 393 F.3d at 1219.  Accordingly, Defendant's

motion to dismiss Count II of the Second Amended Complaint is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's Partial Motion to Dismiss Counts I and II of Plaintiff's Second Amended Complaint (Doc. #32) is **GRANTED in part as to Count II, but is otherwise DENIED.**

2. Count II of the Second Amended Complaint (Doc. #26) is **DISMISSED without prejudice.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___8th___ day of August, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record

18